## City of Allentown, Plff. in Err., *v.* Susie Adams et al.

---

### Same *v.* Same.

Where land in front of which water pipes are laid is rural or suburban it cannot be assessed according to the "foot front rule."

In scire facias upon a municipal lien, filed against rural or surburban land for water pipes according to the "foot front rule," testimony that the land is enhanced in value by the pipes is irrelevant and inadmissible.

It is for the jury to determine whether the land is urban, suburban, or rural.

(Argued February 14, 1887. Decided February 28, 1887.)

January Term, 1886, No. 201, E. D., before MERCUR, Ch. J.,

Cited in Pittsburgh's Appeal, 118 Pa. 458, 12 Atl. 366.

NOTE.—See note to Philadelphia v. Keith, 1 Sad. Rep. 359, and Stewart v. Philadelphia, 3 Sad. Rep. 137.

In Pittsburgh's Appeal, 118 Pa. 458, 12 Atl. 366, a bill in equity to cancel a lien against rural property was dismissed, the complainant having made no offer to compensate the city for the benefits received, and therefore was not entitled to equitable relief. The rule would be otherwise, if the effort was to enforce the lien filed.

GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Error to the Common Pleas of Lehigh County to review judgments on verdicts for the defendants in actions of scire facias sur municipal liens. Affirmed.

These cases between the same plaintiff and defendants were tried together.

Allentown, being a city of the fourth class, under the acts of 1874–76, the following ordinance was adopted by councils on January 16, 1883, to wit:

"An ordinance authorizing and directing the board of water commissioners to lay a 12-inch water main on Hamilton street, west of Tenth street, to Seventeenth street."

"Be it ordained, by select and common councils of the city of Allentown, and it is hereby ordained, by the authority of the same, that the board of water commissioners be and is hereby authorized and directed to lay a 12-inch water main on Hamilton street, west of Tenth street, to Seventeenth street."

Acting under this ordinance, pipes were laid and liens filed against adjoining property owners.

The other essential facts as they appeared at the trial before HAGENMAN, P. J., of the 23d judicial district, specially presiding, are stated in his charge to the jury.

The plaintiff offered, *inter alia,* to prove, as bearing upon the character of this land, that as soon as the water mains were laid and the street macadamized, a large number of buildings were erected along this street, between Twelfth and Fifteenth. But the court rejected the offer.

The charge was as follows:

This action is brought by the city of Allentown against Susie Adams and Samuel Adams, her husband, to recover an assessment which was laid against the property of the defendants on Hamilton street, for the laying of water pipes.

The evidence discloses that Mrs. Adams owned a tract of land through which Hamilton street runs. The tract contains some 40 odd acres. The city of Allentown laid water pipes out Hamilton street along the front of the property of Mrs. Adams; and the city assessed this property at, near, or about $1 a foot frontage tax towards bearing the expense of the laying of these pipes.

The jury have nothing to do with the cost of laying these

pipes. The simple question for the jury to pass upon is whether the defendants are liable under the evidence for the payment of this tax, as assessed by the plaintiff.

Some years ago, and before Allentown was extended, the tract now owned by Mrs. Adams was a farm, outside of the city limits, extending from what is now known as Linden street down across Hamilton and Walnut streets to the Little Lehigh. At that time it was undoubtedly country property; it was a country farm. By the extension of the line of the city of Allentown, this property was brought within the limits of the city. Where the previous line of Allentown was, before it was extended westward, does not appear in the evidence, but probably it was near what is now known as Twelfth street.

That property was brought within the city limits, and thereupon Linden, Hamilton, and Walnut streets were laid out and opened. There are no other streets opened through this extent from Twelfth street out to Seventeenth street, except, I believe, Fulton street, which is spoken of, to my recollection. There are streets not opened, but ordained by ordinance, running out from Twelfth street to Seventeenth, which, when opened, will cut up this property in a large number of divisions.

This property was used as a farm before it was brought into the city. The evidence that was produced upon the part of the defendants and also upon the part of the plaintiff is that it was used as a farm. You have the testimony of one person, who was a tenant of that property. He testified that he had leased that property about 1880, and continued in possession under that lease until April, 1884, after these pipes were laid; and the whole property, except that which was cut off from it by the opening of Hamilton and Walnut streets, was used as a farm, the same as it had been before the city was extended. These pipes were laid on Hamilton street, and fronting on this property of Mrs. Adams; and in the subdivision of this property some 40 feet lies to the east of one of these cross streets, which, when opened, will leave but 40 feet.

To make myself understood: the street is not now opened, but when opened it will leave 40 feet of this property of Mrs. Adams to one side of that street. Her land lies in the other direction, on the opposite side. That is the reason why this frontage tax of 40 feet is charged.

The contest here is, and it was argued before you, that this is

rural property, or suburban property, as it is called, and therefore is not chargeable with a frontage tax. The plaintiff contends that it is not rural property; that it is not suburban, but that it is strictly, as we understand it, city property, and therefore liable for this frontage tax.

There is no dispute upon the law of this case on either side.

If it is rural or suburban property, then it is not chargeable. If it is what we call strictly city property, it is chargeable with a frontage tax. The evidence on both sides of this case was directed to the establishment of this fact. As you find it, so your verdict will be.

We were asked by the plaintiff in two points to define what rural and what suburban property is. The first point submitted by the plaintiff is: "By suburban land is meant land and territory on the confines of a city, which, though within the geographical limits of the city, is country and rural, rather than city property." This point is affirmed. It is a definition of what is called suburban property. Suburban property is what we call property in the suburbs of the city, lying within the city limits, or within its suburbs.

The second point submitted is: "By rural land is meant country, rustic, farm land as distinguished from city or town land, or plots of land." This point is also affirmed.

The eighth point is also a definition of what rural land is. "By rural land is meant 'pertaining or belonging to the country as distinguished from a city or town; suiting the country or resembling it.'" This point is also affirmed. These are definitions of rural and suburban property, and are explanations of what we understand by rural or suburban property.

[There was one other question to which the evidence had reference, and that was as to the laying of these water pipes along Hamilton street. It was said that these water pipes were laid at this time so as to prevent the street, after it had been macadamized, from being dug up again for the purpose of laying these pipes; and it was contended upon the part of the defendants that if that was the cause for the laying of these pipes, then they cannot be held liable for that frontage tax.]

At this point, before I turn to the evidence that was submitted by the defendants to show the character of this property, I may say to you that the laying of these water pipes along Hamilton street, and in front of this property, may have enhanced

the value of this property, and if it be rural or suburban property, that will not give the city a right to charge the property with a frontage tax.

The laying of a water pipe along a street in front of property where there is no water, necessarily and of itself adds an increased value to the property; but that does not justify or authorize the city, which lays a pipe in front of a property, to charge that property to the extent of what may be the increased value of the property.

[The supreme court has said, in a case which I have before me, that that cannot be inquired into. The case to which I refer was a case in the city of Philadelphia. There the property was what we call rural property. The city laid the water pipes in front of it, and then charged the lot of property with a certain frontage tax by the foot. It being rural property it was held that that could not be done. The city then offered to prove that the property was enhanced in value by the laying of these water pipes, and the court below said it was not evidence, and the party could not prove it. The case went before the supreme court, which said: "This is an attempt to charge the farm land of the defendant at the rate of $1 per foot for water pipes laid by the city. The property being rural, there is an absence of power to charge it in that manner." Whether or not the property on each side of the street, including the defendants', is enhanced in value by the laying of the water pipes is therefore irrelevant.]

What kind of property is this? Is it rural or suburban property, or is it what we strictly call city property? If it be rural or suburban, then the court says to you that the defendants cannot be charged with this frontage tax. If it be city property, they can be charged.

I referred to the fact of how this property came within the city limits. It was by the extension of the boundaries of Allentown to the westward that the property was brought within the city limits. The simple extending of the line of the city of Allentown, bringing property within it, of itself does not make it city property. While strictly speaking, we would call it city property, because it is within the limits of the city, the jury will understand, from what I have already said, what is meant by rural, suburban, or city property.

[The defendants offered a considerable amount of testimony to show that this land was used, after it was brought within the

limits of the city, as it had been previously. There was a large number of witnesses examined; and they all, without exception, to my recollection, said that this property was farm land; that it had been used before it was within the city limits as a farm, and was used as such up to the time when these pipes were laid, in the summer of 1883; that it was tilled as a farm usually is, and that wheat, corn, potatoes, etc., were raised on it.

I will refer to the testimony of several witnesses, who testified in this case, and those parts I will read to you. The jury will recollect that this is from the evidence as to how this property was used, before and after the time it was brought within the city limits, up to 1883; and they will have to determine from that evidence, and from the property both near to Allentown and beyond it, as to whether it may be styled rural or suburban property, or whether it should be called city property.

Mr. Thos. B. Metzger was called upon the part of the defendants, and he said that he had known this property some thirty-six years. Then the question was put:

From that time on down to the time these water pipes were laid it has been used for farming purposes continuously?

*A.* Yes, sir.

*Q.* All of the land adjoining is used for farming purposes?

*A.* Yes, sir.

*Q.* It is all country land?

*A.* Yes, sir.

*Q.* There are no houses on either Hamilton street or Walnut from Reinhart's house out to the house that you own beyond Seventeenth street?

*A.* Yes, sir.

*Q.* There are no houses west of Jefferson street, on Hamilton or Walnut?

*A.* None on the south side of Hamilton except Reinhart's; it is used as farm land out to my house.

*Q.* Your farm is opposite the Griesemer farm?

*A.* Partly.

The jury will remember that all the witnesses examined on the part of the defendants testified that from Twelfth street, out to Seventeenth, on Hamilton street, there was at the time this property was brought within the city limits but one house

(the Reinhart house), and that from that time down to 1883 there were only two other houses built on Hamilton street on the south side, and none on the north side. All the witnesses examined on the part of the defendants give the same statement of facts—that all this part of the city of Allentown lying to the west of Twelfth street, was in 1883 almost, if not entirely, in the same condition it was when, in the year 1869 or 1870, the boundaries of Allentown were extended westward.

There was one witness examined on the part of the plaintiff, Dr. E. G. Martin, who probably was mayor at the time when this improvement was made on Hamilton street. In his cross-examination the question was asked:

There was at the time these mains were laid no other property along Hamilton street, from Twelfth to Seventeenth streets in 1883, that was benefited by it as a public improvement?

A. Yes, sir.

Q. The street was macadamized at that time?

A. Yes, sir.

Q. And to save the trouble and expense of digging up the street after it was macadamized it was thought best to do it before the street was macadamized?

A. Yes, sir. I think that was the gist of it.

This has reference to the other point which I will presently refer to, as to the question whether these pipes were laid as a convenience to the city, and to save expense to the city in laying the pipes.

Q. This property in 1883 from Twelfth street, out to Seventeenth street, on both sides of Hamilton, was what is known as country property?

A. Yes, sir.

Q. It was used for farming purposes?

A. Yes, sir.

Later on there was some inquiry made about lots, and the question was put:

Q. So far as you know no portion of the Adams tract was ever sold off in lots?

A. Not as far as I know.

Q. And that the whole of it was used from Linden street to the Little Lehigh as a farm?

*A.* Yes, sir.

Further on in his testimony he was asked:

*Q.* Water was of no use to the owners of these properties along Hamilton street?

*A.* No, sir.

This is the character of the evidence that came in from all the witnesses that were examined, pretty much on both sides, while there was some difference in the testimony of the witnesses who were examined on the part of the plaintiff.

The plaintiff alleges that by the opening of Hamilton street through this property, probably also in consequence of the laying of these water pipes, this property of the Adams tract became more valuable, because of its character for building lots, than it was before. That testimony was offered on the part of the plaintiff to show that it is city property, and not what we call rural or suburban property.]

(The court then proceeded to answer the point submitted by the parties, concluding with the defendants' fifth point which was as follows):

"If the jury believe that the laying of the mains in front of the property of the defendants was not called for by reason of there being any houses where water could be used near, in front of, or beyond the property of the defendants, and that they were laid because the city proposed to macadamize Hamilton street from Twelfth to Seventeenth, and thereby save the city the expense of digging up the street after it had been macadamized, then the laying of them must be regarded as a public improvement, and the cost cannot be assessed on the abutting landowners." [This, gentlemen, is the law, and the point is affirmed.]

The question for you to consider is, under all the evidence, whether this is what we call farm, rural, or suburban property. Is it rural or suburban property? If it is, then this assessment, as it has been laid, cannot be recovered by the city. If it is city property the city can recover. This is entirely to be passed upon by you under all the evidence. You will examine the whole case from beginning to end, and say whether it is rural or suburban property. If you find that it is, then this assessment by the foot rule cannot be sustained. If it is city property it can be sustained.

[In regard to this other point. If the pipes were simply laid before macadamizing, for the purpose of saving expense to the city, and it was not regarded as a public improvement at the time it was made, there can be no recovery on that point. If there was no necessity for this improvement, or the laying of this pipe at the time it was done, and the city laid these pipes in advance of the time of macadamizing the street simply to save costs and expenses to the city, there can be no recovery.]

The question as to whether this property would be liable for this public improvement by some other assessment than the assessment by the foot rule is not raised in this case; and therefore it is not necessary for the court to express any opinion about it.

Verdict and judgment were for the defendants in both cases.

The assignments of error specified the rejection of the plaintiff's offer, the portions of the charge inclosed in brackets, and that the charge was partial and misleading.

*R. E. Wright's Sons,* for plaintiff in error.—The city of Allentown accepted the provisions of the act of 1874 dividing cities into classes, soon after its passage, so that that act with its supplements constitutes the city charter.

By it the water department, being authorized thereunto by councils, may lay water pipes and charge the cost thereof to the owners of abutting lands. Purdon's Digest, p. 1239, pl. 166, 167, p. 1240, pl. 174.

The claim filed therefor is prima facie evidence of the amount due. Purdon's Digest, p. 1227, pl. 106.

The jury cannot review the discretion and motives of the municipal legislature and annul its ordinances. Easton v. Neff, 102 Pa. 477, 48 Am. Rep. 213; Com. use of Pittsburgh v. Woods, 44 Pa. 117; Freeport v. Marks, 59 Pa. 257; Fisher v. Harrisburg, 2 Grant, Cas. 296; O'Maley v. Freeport, 96 Pa. 30, 42 Am. Rep. 527.

If the court in its charge to the jury refers to the evidence and comments upon it, it is but right that it should bring every part of it which bears upon the point to their notice so that they may not be misled, and if the court instructs the jury that it can see no evidence which leads to a certain conclusion, when there is such evidence, it is error. Nieman v. Ward, 1 Watts & S. 68.

It is cause for complaint if the court in its charge omits facts material to one party and grounds its instruction only on that which makes in favor of the other. Heilbruner v. Wayte, 51 Pa. 259.

A tendency to mislead, in the general tenor of the charge, although no particular portion of it is clearly erroneous, is sufficient ground for reversal. Washington Mut. F. Ins. Co. v. Rosenberger, 3 W. N. C. 17.

If the court proceeds to state the testimony of witnesses, it ought all to be stated, in substance at least. Parker v. Donaldson, 6 Watts & S. 137.

Where the language of the charge as to the true character of the testimony tends to mislead the jury, it is error and a ground for reversal. Fawcett v. Fawcett, 95 Pa. 376.

In Gehman v. Erdman, 15 W. N. C. 280, Judge CLARK said: "The testimony was voluminous; and as the plaintiff in error complains, the jury would doubtless rely upon and be largely influenced by the impressions received from the rehearsal of it by the court; it was important, therefore, that the *resumé* should be as full on the one side as the other, that the jury might not be misled."

The main question here at issue before the jury was whether these lands were rural or city lands; and the whole body of the voluminous testimony was directed to the solution of that question.

Local taxation can be sustained only for local benefits. Where the benefits conferred by a public improvement are not local, there can be no local assessment to pay the expense of erecting them. Hammett v. Philadelphia, 65 Pa. 146, 3 Am. Rep. 615; *Re* Washington Ave. 69 Pa. 352, 8 Am. Rep. 255.

While the paving or curbing of a street, or the laying of water pipes in a city, in front of lands that are adapted and available for city and building purposes, either at the time or in the immediate future, benefits abutting properties beyond the benefits conferred upon the public generally, it is clear that in country or rural districts where the lands are not available for such purposes as make these improvements beneficial, where their principal value consists in their use for farming purposes or in their devotion to uses that are not aided by the improvement,—in such cases as there are no local benefits there can be no local assessments. Seeley v. Pittsburgh, 82 Pa. 360, 22 Am.

Rep. 760; Bidwell v. Pittsburgh, 85 Pa. 412, 27 Am. Rep. 662; Craig v. Philadelphia, 89 Pa. 265; Philadelphia use of Johnson v. Rule, 8 W. N. C. 244; Philadelphia v. Wetherill, 13 W. N. C. 10; Scranton v. Pennsylvania Coal Co. 15 W. N. C. 131.

The court in charging the jury ignored the testimony for the plaintiff that the principal use and value and characteristic of these lands consisted in their adaptability for and use and value as city building lots.

This evidence went to the main contention in the cause.

*Edward Harvey,* for defendants in error.—The authority and discretion vested by the act in the board and in councils to lay water pipes is not questioned in these cases. Ample power to lay the pipes may exist, and councils may be powerless to assess on the basis of the "per foot front rule."

The right to improve by municipal regulation is statutory; the power to assess a tax for such improvements, while it, too, may be statutory, yet is always subject to constitutional limitation. Hammett v. Philadelphia, 65 Pa. 146, 3 Am. Rep. 615; Re Washington Ave. 69 Pa. 352, 8 Am. Rep. 255.

In Craig v. Philadelphia, 89 Pa. 265, it was held that on a sci. fa. on a municipal claim to recover the amount of an assessment of a tax for a street improvement, the defendant could show that the widening of the street was not called for by any reason save as a public improvement.

In Re Canal Street, 11 Wend. 155, the defendant was allowed to show that the assessment laid would have ruined the property owners, if required to pay; that it was exorbitant and beyond the benefits conferred.

In Creighton v. Manson, 27 Cal. 613, the lot in question, before the grading of the street, was appraised for revenue purposes at $1,400; it was rendered worthless by the grading; and the assessment for the grading was $1,989.54. This was proved to defeat a recovery, and it was held to be a good defense.

In Scranton v. Pennsylvania Coal Co. 105 Pa. 445, a recovery was defeated by proof on the trial of a sci. fa. that the property was rural.

In Philadelphia use of Johnson v. Rule, 93 Pa. 15, the defendants gave evidence to show that the materials used in paving were not good.

Rural land is not subject to the "per foot front rule assessment." Scranton v. Pennsylvania Coal Co. 105 Pa. 445; Fer-

son's Appeal, 96 Pa. 140; Philadelphia use of Johnson v. Rule, 93 Pa. 15; Seely v. Pittsburgh, 82 Pa. 360, 22 Am. Rep. 760; Philadelphia v. Wetherill, 13 W. N. C. 10.

The judge submitted all of the evidence bearing on this point to the jury. All that is required is that the court leave the questions of fact fairly to the jury in the charge taken as a whole. Reese v. Reese, 90 Pa. 89, 35 Am. Rep. 634.

A strong expression of opinion upon the facts, which, if taken in connection with the whole charge, does not amount to a binding instruction, is not ground for reversal. Johnston v. Com. 85 Pa. 54, 27 Am. Rep. 622; Bonner v. Herrick, 39 Phila. Leg. Int. 364; Gehman v. Erdman, 15 W. N. C. 280.

A case will not be reversed on account of an expression of opinion by the court as to which of certain witnesses are most entitled to credit, or upon evidence in the case, which, however, is submitted to the jury for its decision. Porter v. Seiler, 23 Pa. 424, 62 Am. Dec. 341.

All other questions are immaterial in this case, except that the land assessed was rural. That question was resolved according to the preponderance of proof, and according to the case of Philadelphia v. Wetherill, 13 W. N. C. 10.

The blending of town and country, of city lots and farm lands, of the residences of the living and the graves of the dead, constitute a group so motley and discordant, a series so wanting in similitude and uniformity, that the frontage or per foot front rule cannot be applied to it. It is so plainly, palpably, rankly, and ruinously unjust, it must be pronounced no proper or lawful mode of special taxation. Seely v. Pittsburgh, 82 Pa. 367, 22 Am. Rep. 760.

The per foot front rule can apply only to cities and large towns, where the density of population along the street, and the small size of lots, make it a reasonably certain mode of arriving at a true result. *Re* Washington Ave. 69 Pa. 361.

PER CURIAM:

It is well settled, when the land, in front of which the water pipes are laid, is farm land and suburban property, that it cannot be assessed according to the "foot front rule." In such case, there is an absence of power to tax it in that manner.

We discover no error in the answers to the points nor in the charge of the court. The law was correctly declared.

Judgment affirmed in each case.